IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KARIM OVERK A77-630-244     :
    :
    Petitioner,     :
    :
    v.     :     CIVIL ACTION
    :
JOHN ASHCROFT, UNITED STATES : 
ATTORNEY GENERAL and the     :
IMMIGRATION AND     :     NO. 02-5253
NATURALIZATION SERVICE     :
    :
    Respondents.     :

## ORDER

AND NOW, this     day of     , 2002, upon

consideration of the Government's response to Petitioner's Writ of Habeas Corpus, and

any response thereto, it is hereby ORDERED that the petition is DISMISSED.

BY THE COURT:

_____

EDUARDO C. ROBRENO
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KARIM OVERK A77-630-244     :
          :
     Petitioner,     :
          :
     v.     :     CIVIL ACTION
          :
JOHN ASHCROFT, UNITED STATES :
ATTORNEY GENERAL and the     :
IMMIGRATION AND     :     NO. 02-5253
NATURALIZATION SERVICE     :
          :
     Respondents.     :

**GOVERNMENT'S RESPONSE TO
PETITION FOR WRIT OF HABEAS CORPUS**

The United States of America, by its attorneys, Patrick L. Meehan, United

States Attorney for the Eastern District of Pennsylvania, and Sonya Fair Lawrence,

Assistant United States Attorney for the District, on behalf of respondents, John Ashcroft,

United States Attorney General, and the Immigration and Naturalization Service, hereby

files this response to Karim Overk's Petition for Writ of Habeas Corpus and moves the

Court to dismiss the Petition.

I.    **Introduction**

        This is a habeas petition brought under 28 U.S.C. § 2241 by Karim Overk, a

native and citizen of Algeria.  The Court has jurisdiction under 28 U.S.C. § 2241(c)(3);

there is no exhaustion requirement.

Mr. Overk filed the instant habeas petition on or about July 24, 2002.  In the petition, Mr. Overk claims that his detention by the Immigration and Naturalization Service ("the Service") for a time period beyond six months violates the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2492 (2001).  Mr. Overk's argument, however, is without merit.  In accordance with the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ( "IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009-546; 8 U.S.C. § 1182(a)(6)(D), Mr. Overk is an inadmissible alien  - - a person who is physically present in the United States, but is considered detained at the border.   As the Supreme Court's holding in Zadvydas pertains only to those aliens who have "gained entry" into the United States, Mr. Overk may not rely upon Zadvydas to obtain habeas relief.

Even if Zadvydas applied here, Mr. Overk is not entitled to habeas relief because he has not presented any evidence supporting his conclusion that removal is unlikely in the reasonably foreseeable future.  The Service has made diligent efforts to obtain travel documents from the Algerian government and believes that removal will likely occur in the reasonably foreseeable future.  Moreover, Mr. Overk has not actively assisted the Service in obtaining information necessary to procure travel documents from Algeria; therefore, Zadvydas affords him no relief.  For the reasons stated herein, the petition must be dismissed.

II.    **Factual Background**

On or about January 25, 2000, Mr. Overk entered the United States on a Polish-flagged ship as a stowaway. (See Exhibit 1).  On that date, the Immigration and Naturalization Service ("the Service") took Mr. Overk into custody.  While in custody, Mr. Overk requested asylum and withholding of removal under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("the Convention Against Torture").  On February 28, 2000, an asylum officer conducted a "credible fear" interview, pursuant to 8 U.S.C. § 1225 (b)(1)(B). After determining that Mr. Overk reported credible fear of returning to Algeria, the asylum officer referred the matter to an Immigration Judge for further review.  (See Exhibit 2).  On June 21, 2000, Judge Walter A. Durling held an Asylum hearing in which Mr. Overk testified at length. (See Exhibit 1).  At the end of the hearing, Judge Durling issued an order, denying Mr. Overk's application for asylum and withholding of removal under Sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1231(b)(3), and denying his claim brought pursuant to the Convention Against Torture. (See Exhibit 3).  Judge Durling further ordered Mr. Overk returned to the jurisdiction of the Service for removal. (See Exhibit 1 ).

Mr. Overk appealed the June 21, 2000, decision of the Immigration Judge to the Board of Immigration Appeals ( "the Board").  On October 20, 2000, the Board dismissed the appeal, finding that Mr. Overk failed to establish a well-founded fear or clear probability of persecution if returned to Algeria.  (See Exhibit 4).  The Board further

determined that Mr. Overk "did not establish a likelihood of torture 'at the instigation or with the consent or acquiescence of ' Algerian officials or persons acting in an official capacity." Id. Thus, Mr. Overk's order of removal became final on October 20, 2000, the date of the Board's final decision. Upon entry of the final order of removal, the Service instituted proceedings to repatriate Mr. Overk to Algeria.

On April 24, 2001, six months after the issuance of a final order of removal, the Service conducted a Post Order Custody Review ( "POCR") of Mr. Overk's detention, pursuant to 8 C.F.R. § 241. The deportation officer conducting the review discussed the carrier's responsibility to remove Mr. Overk from the United States and reported that the carrier had been unable to obtain travel documents to repatriate Mr. Overk to Algeria. (See Exhibit 5).[1]

The reviewing officer further reported that Mr. Overk had not provided the Service with documentation confirming his identity and had failed to assist the Service in obtaining a travel document from his native country. Id. The officer also noted that Mr. Overk had ties to terrorists in Spain and the United States and that he received two disciplinary reports for misconduct while in INS custody. Id. Concluding that Mr. Overk was a flight risk, the reviewing officer recommended that Mr. Overk remain in INS custody pending the receipt of travel documents from Algeria. Id. The District Director

---

[1] Subject to certain exceptions, an alien entering the United States as a stowaway must be removed from the country by the owner of the vessel upon which the alien arrived. 8 U.S.C. § 1231(c)(1). According to documents obtained from the Service, the carrier responsible for facilitating Mr. Overk's arrival in the United States reported its inability to obtain travel documents from Algeria on April 23, 2001.

concurred with the recommendation and authorized the transfer of custody determination to INS Headquarters' Parole and Detention Unit ( "HQPDU") in Washington, D.C.   On the same day, the District office of the Service sent a request for assistance in obtaining travel documents to the HQPDU.  (See Exhibit 6).

The Service conducted a second POCR review on June 8, 2001, in which the panel found that Mr. Overk: (1) was hindering efforts to return him to his native country; (2) presented several disciplinary problems while in INS custody; and (3) posed a potential threat to the community because of his ties to persons involved in terroristic activities.  (See Exhibit 7).  Considering these factors, the panel recommended continued detention while the Service sought travel documents from Algeria.  Id.

While Mr. Overk remained in custody, the Service continued its efforts to effect his removal.  On August 31, 2001, the Algerian Embassy requested that the Service provide them with a copy of Mr. Overk's official Algerian identification.  (See Exhibit 8). At that time, Mr. Overk claimed that he could not obtain any Algerian identity documents. Id.  On October 2, 2002, however, Mr Overk gave Mr. Belkessam, of the Algerian Consulate, the name of a sibling allegedly living in Algeria.  Id.  The Algerian Consulate agreed to contact the brother to seek his assistance in obtaining  proof of Mr. Overk's Algerian citizenship.   Id.  On February 20, 2002, the Service reported that the Algerian Consulate believes that Mr. Overk is an Algerian citizen, but must have documentation of such citizenship before travel documents can be issued.  (See Exhibit 9).

 On or around April 2002, Mr. Overk contacted the Service to request a custody

redetermination.  In response to his request, the Service issued a written notice to Mr.

Overk, detailing efforts to review the likelihood of repatriation and explaining his burden

to show that there is no significant likelihood of repatriation in the reasonably foreseeable

future.  (See Exhibit 10).  The notice also set forth Mr. Overk's responsibility to provide

the Service with evidence of his good faith efforts to obtain Algerian documentation, and

all copies of nationality documents in his possession.  Id.  Although the Service issued

the review notice to Mr. Overk on April 23, 2002, Mr. Overk has not provided the Service

with evidence of his efforts to obtain travel documentation and has not shown that there is

no significant likelihood of repatriation in the reasonably foreseeable future.

### III.    Legal Argument

### A.    Zadvydas is inapplicable to Mr. Overk's claims

Under the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. ("the

Act"), the Service has a 90-day statutory "removal period" in which to effect Mr. Overk's

removal from the United States.  8 U.S.C. § 1231(a)(1)(A).  The removal period starts at

the latest of three points: (i) the date the order becomes administratively final; (ii) the date

of any reviewing court's final order; or (iii) the date the alien is released from criminal

confinement.  See 8 U.S.C. § 1231(a)(1)(B)(i)-(iii).  In the instant matter, the removal

period began on October 20, 2000, the date the Board of Immigration Appeals entered its

final decision on Mr. Overk's asylum, withholding of removal, and Convention Against

Torture applications.    See 8 U.S.C. § 1231(a)(1)(B)(i).

Detention is mandatory during the removal period.  8 U.S.C. § 1231(a)(2).  If the

Service is unable to remove the alien during the 90-day removal period, however, the

government "may" continue to detain the alien if the Attorney General has determined the

alien to be a "risk to the community or unlikely to comply with the order of removal . . . ."

8 U.S.C. § 1231(a)(6); see also 8 C.F.R. § 241.4(a).

In Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 ( 2001), the Supreme

Court addressed the temporal limits of detention of an alien after the issuance of a final

order of removal.  Unlike Mr. Overk, the Zadvydas petitioner had been admitted to the

United States for permanent residence, but had been ordered deported following criminal

convictions.  Because Zadvydas was actually "stateless" (he had been born in a displaced

persons' camp in Europe just after the Second World War), no country would agree to

take him.  The Court held that Zadvydas' continued detention was not permissible absent

some showing that he could be removed.

Although Mr. Overk argues that he has been subject to prolonged detention,

his case differs from the detention at issue in Zadvydas in a critical respect.  In Zadvydas,

the Supreme Court carefully distinguished inadmissible aliens, never deemed by law to

have entered this country, from the aliens who, through a variety of avenues, have

previously gained lawful admission to this country, but have since been ordered removed.

Id. at 682, 121 S.Ct. at 2495.  In doing so, the Court reaffirmed the "basic territorial

distinction" between an alien who has entered the country and enjoys constitutional

protections and one who the law deems to have been "stopped at the border," beyond the

shelter of the Constitution. Id. at 693, 121 S.Ct. at 2501 (declining to overrule

Shaughnessy v. U.S. Ex.rel. Mezei, 345 U.S. 206., 73 S.Ct. 625 ( 1953)).

Overk is clearly an inadmissible alien. See 8 U.S.C. §1182(a). Because Section 1182(a) classifies him as an inadmissible alien, Section 1231 permits his detention beyond the removal period, even if such time extends beyond the presumptively reasonable six month period set forth in Zadvydas. As such, Zadvydas has no application to the claims set forth in Mr. Overk's Petition for Habeas Relief.[2]

**B.    Chi Thon Ngo v. I.N.S. provides the controlling law in this case**

Petitioner's case falls squarely within the holding of Chi Thon Ngo v. I.N.S., 192 F.3d 390 (3d. Cir. 1999), wherein the Third Circuit determined that there is no constitutional impediment to the indefinite detention of an alien with a criminal record under a final order of exclusion, deportation, or removal if (1) there is a possibility of his eventual departure; (2) there are adequate and reasonable provisions for the grant of

---

[2]    By its own terms, the Supreme Court's ultimate ruling in Zadvydas only applies to aliens who have effected a lawful entry into the United States. 533 U.S. at 690, 121 S.Ct. at 2499- 2502. Within the first three paragraphs of the decision, Justice Breyer made the important distinction: "We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question." Id. at 682, 121 S.Ct. at 2495.

In Xi v. INS, 298 F.3d 832 (9th Cir. 2002), however, a divided three-judge panel directly contradicted Justice Breyer's analysis, extending the reach of Zadvydas to persons deemed inadmissible to the U.S. under INA § 212. Id. at 836 (finding that the ultimate holding in Zadvydas addresses 8 U.S.C. § 1231 (a)(6) in its entirety; therefore there is no exception carved out to exclude inadmissible aliens).

The decision in Xi is inconsistent with the Supreme Court's holding in Shaughnessy v. U.S. ex rel. Mezei, 345 U.S. 206 (1953), which permits the prolonged detention of aliens who have not gained lawful entry into the United States. Indeed, the law, as set forth in Mezei, *supra,* and Chi Thon Ngo v. I.N.S., 192 F.3d 390 (3d.Cir. 1999) controls here; Xi is alone in its holding and has no application in the present case.

parole; and (3) detention is necessary to prevent a risk of flight or a threat to the community. Id. at 397. According to Ngo, excludable [3] aliens may be detained for lengthy periods when removal is beyond the control of the INS, provided that appropriate provisions for parole are available. Id. at 398.

The Service has instituted efforts to obtain the necessary travel documents to facilitate Mr. Overk's removal, however, the Algerian government has requested that the Service provide them with a form of Algerian identification before it will issue travel documents for Mr. Overk's repatriation. The Service has repeatedly attempted to enlist Mr. Overk's assistance in obtaining such documentation, but he has refused to do anything more than provide the name of an alleged brother who may assist the service in obtaining documentation proving Algerian citizenship. (See Declaration from Deportation Officer David Savina at Exhibit 11). Mr. Overk's refusal to actively pursue travel documentation from Algeria, coupled with the Algerian government's insistence upon receiving copies of Algerian identification documents before it agrees to issue travel documents on Mr. Overk's behalf, has prolonged the process of removal, but has not foreclosed the possibility of his return to Algeria in the reasonably foreseeable future.[4]

Despite Mr. Overk's minimal efforts to aid the Service in obtaining travel

---

[3]    In 1996, the IIRIRA replaced the term "excludable" with "inadmissible." IIRIRA § 308(d).

[4]    Under 8 U.S.C. § 1231 (a)(1)(C) an alien awaiting removal may be detained during a period extending beyond the removal period if he fails or refuses to make good faith efforts to obtain documents necessary to facilitate his removal. Thus, Mr. Overk cannot reasonably argue that his removal is unlikely to occur in the reasonably foreseeable future when his own failure to aid the Service in obtaining travel documents is prolonging the removal process.

documents, the Service has followed its procedures for reviewing Mr. Overk's custody status since he has been detained beyond the 90-day statutory removal period.  The regulations pertaining to the Act state that:

> The district director may continue in custody any alien
> . . . removable under [8 U.S.C. §] 1227(a)(2). . . or who
> presents a significant risk of noncompliance with the
> order of removal, beyond the removal period, as
> necessary, until removal from the United States. If
> such an alien demonstrates by clear and convincing
> evidence that the release would not pose a danger to
> the community or a significant flight risk, the district
> director may, in the exercise of discretion, order the
> alien released from custody on such conditions as the
> district director may prescribe, including bond in an
> amount sufficient to ensure the alien's appearance for
> removal.

8 C.F.R. § 241.4(a).

In reviewing an alien's case for continued detention or release:

> The district director may consider, but is not
> limited to considering, the following factors: (1)
> The nature and seriousness of the alien's
> criminal convictions; (2) Other criminal history;
> (3) Sentence(s) imposed and time actually
> served; (4) History of failures to appear for
> court (defaults); (5) Probation history; (6)
> Disciplinary problems while incarcerated; (7)
> Evidence of rehabilitative effort or recidivism;
> (8) Equities in the United States; and (9) Prior
> immigration violations and history.

8 C.F.R. § 241.4(f).

The Service has periodically reviewed Mr. Overk's custody and each time has concluded that his association with known terrorists and disciplinary problems while in

custody pose a danger to the community and therefore necessitate his continued detention. ( See Exhibits 5 and 7).   The custody review process has now been transferred to the HQPDU, which will continue to evaluate the necessity of detention while removal is pending.   If Mr. Overk's detention continues for an extended period of time while awaiting removal, he is entitled to additional custody reviews by the HQPDU on a regular basis, and may present evidence of changed circumstances that would justify his supervised release, or evidence that would establish that the Service will not be able to carry out his removal in the reasonably foreseeable future.  See 8 C.F.R. 241.13.  In fact, the Service has requested that Mr. Overk provide it with information substantiating his claims that removal is unlikely; however, Mr. Overk has not provided any evidence to support such claims.

Although requests for travel documents are still pending, there is no reason to believe that the Service will be unable to carry out Mr. Overk's removal within the reasonably foreseeable future.  Mr. Overk continues to be detained while awaiting removal because the Service has determined that he poses a danger to the community and presents a flight risk if released.  Although reviews of his custody will be conducted on a regular basis while he awaits removal, at present, Mr. Overk's detention is both necessary and lawful.  Thus, his Petition for Habeas Relief should be dismissed.

IV.   **Conclusion**

      For the foregoing reasons, the government respectfully requests that the

Court dismiss the Petition.

                    Respectfully submitted,

                    PATRICK L. MEEHAN
                    United States Attorney


                    _____
                    JAMES G. SHEEHAN
                    Assistant United States Attorney
                    Chief, Civil Division


Dated: September    , 2002        _____
                    SONYA FAIR LAWRENCE
                    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the     day of September, 2002, I caused a true and correct

copy of the foregoing Government's Response to Petition for Habeas Corpus to be served

by first-class mail, postage prepaid, upon the following:


Karim Overk
A77-630-244
1287 County Welfare Road
Leesport, PA 19533


Pro se petitioner



_____
Sonya Fair Lawrence
Assistant United States Attorney
Suite 1250, 615 Chestnut Street
(215) 861 - 8921
(215) 861 - 8349 (telecopier)