IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Karim Overk | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 02-5253 |
| | : | |
| v. | : | |
| | : | |
| John Ashcroft, United States | : | |
| Attorney General, et al. | : | |
| | : | |
| Respondents. | : | |

**EXHIBIT 1**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
York, Pennsylvania

File No:  A 77 630 244                    June 21, 2000

In the Matter of            )
                            )
KARIM OVERK                 )      IN ASYLUM-ONLY PROCEEDINGS
                            )
          Respondent        )

CHARGE:        Based on the respondent's presence in the United
               States as a stowaway.

APPLICATIONS:  Asylum; withholding of removal; and Article 3
               Convention Against Torture.

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

Pro se                            Maureen C. Gaffney
                                  Assistant District Counsel

## ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent is a 34-year-old single male alien, native
and citizen of Algeria who arrived in the United States on or
about February 4, 2000 on apparently a Polish-flagged maritime
vessel as a stowaway.  He arrived in Camden, New Jersey, where he
was detained by the Immigration and Naturalization Service and
referred to an Immigration asylum officer who conducted a
credible fear interview of this respondent on or about
February 28, 2000.  His report is attached to the record as
Exhibit No. 2.  At the end of that report a credible fear
determination was found by the asylum officer and then Form
I-863, the notice of referral to the Immigration Judge, was
promulgated by the Immigration Service, which gives jurisdiction

1

in this Court over this claim.

The respondent has testified at length today. He testified that he is of the ethnic group of Berbers, born in Algeria of parents who apparently were Muslim faith, but never openly professed or practiced their religious beliefs. In fact, the respondent disavows any religious following in this regard. He was raised in a family of three brothers and three sisters, all of whom apparently are married now, with the exception of maybe one sister who is divorced. His parents were murdered in 1998, and the Court will go into this a little more later. He attended school through the seventh grade in Algeria, although the respondent professes not to be able to read or write, and particularly write in his native language or read in it, and although he obviously speaks fluent Arabic and apparently after living in Spain for a number of years Spanish as well to a certain degree. He worked as a factory worker from 1983 to 1985 and then performed compulsory military service in the Algerian military from 1985 to 1987.

The respondent testified around this time, upon leaving the military, his parents advised him to go to Europe to seek his fortune apparently because there were little opportunity in Algeria. If for any other reason was no divulged by the respondent. When questioned by the Court the respondent testified that his family was not politically motivated, never had any problems by the government, and never had any problems

A 40 546 867                    2                    June 21, 2000

with anyone else at the time he lived there in 1987. He indicated his father was some type of employee with a government agency in Algeria doing commerce, but again, very little testimony was delved into along those lines.

The respondent testified that he lived in the town of Bercour, which is a suburb of Algiers, the capital of Algeria. Other than one sister living there now, he testifies that all his other siblings have their own families and live elsewhere in Algeria.

The respondent testified that when he departed Algeria he first lived in Lerida which is south of Barcelona, Spain where he lived from 1998 through 1990. While the respondent's testimony is somewhat disjointed in this regard between what he testified to before the Court and what he testified to when questioned by Service counsel, the Court is of the opinion that he had no permanent residence in Spain and had no lawful employment authorization in Spain. Apparently he had some type of month-to-month or quarterly visa, but the Court could not discern exactly what his status was. The Court is satisfied, however, that he does not have any claim to permanent residence or legal residence in Spain. In any event, in 1990 he moved from Lerida to Valencia, Spain where he lived until the time of his departure for the United States. There he worked at selling various merchandise from a house he rented. He sold by word of mouth, primarily to Syrians, Now again, much testimony was delved into

A 40 546 867                    3                    June 21, 2000

by the respondent concerning this, but apparently what the Court fathomed was that the respondent when he was detained by the Spanish authorities in 1992 for about a month or so fell in league with a bunch of Algerians and Pakistanis and Syrians and Palestinians apparently on the lamb in Spain who were engaged in various nefarious and criminal activities, primarily stealing. The respondent would buy these goods from these people, particularly Syrians and Algerians, and sell them to other Syrians; tv sets I believe he said, VCR's, electronic components; these kind of things. Apparently he made a decent living, at least enough to pay rent and survive in Valencia. He did this the entire time from 1990 on.

The respondent went on to testify that some of these Algerian or Syrian nationals started approaching him around late 1998 or so, perhaps early 1999, for him to join their cause and also asked him to obtain some visas. Again, while the Court is not exactly sure what type of visas these were, the Court is of the opinion they were illicit visas or bogus visas being trafficked by Syrians. According to the respondent since he was selling goods to the Syrians the Algerian thieves figured that he could also provide them with these visas, so he saw it as a way to make some more money so he agreed. However, he started becoming fearful of these individuals when they started asking him to purchase weapons on their behalf and also asking him to join them. He never outright refused to join them. According to

A 40 546 867                    4                    June 21, 2000

the respondent he said he laughed when he was asked to join them. The Court discerned this to mean that he was very nervous and scared of them so his response would be to laugh nervously, but he never outright refused to join them.  He just kind of ignored their request to join them.

At this time he also observed a lot of weapons in the hands of these individuals.  Again, apparently they were gangs of individuals loosely associated because some would come and some would go.  Some would stay around, but apparently they were led by Syrians and he was led to believe that they were aligned with the Islamic fundamentalist terrorists operating in Algeria and carrying on a Jihad, and also from the GIA, if which the Court recalls correctly is also an Islamic group, but I am not sure about that.  At least the respondent held them out to be Islamic terrorists.  The Court is similarly familiar with the FIS, the Islamic Salvation Front, which has carried on a war in Algeria for the last few years, a very blood war, particularly against the civilian population.

In any event, the respondent felt threatened by these advances to him for him to become a member of their group.  He did not want to have anything to do with killing people.  He did not want to have anything to do with weapons.  He was a peaceful person.  He does not know how to fight and did not want to learn how to fight, and felt that he was in peril by being associated with them.  In any event, at one point in time, in late 1999 they

A 40 546 867                    5                    June 21, 2000

apparently set him up in a house and asked him to pay rent which he agreed to do. One night going home to this house he used his key to open up his door and upon entering he observed a man hiding behind the curtain. All he could see was his socks around his ankles and he immediately became fearful and ran away. Apparently these individuals chased him with cars and tried to kill him. Late in his testimony he indicated one apparently caught up with him and stabbed him. He was able to get away. He first ducked into a bar and then got into a tax and went directly to a police station. There he was told to come back the next day. He kind of waited around outside until the next morning. Then was taken by a police car to another police station. When questioned by the Court he says he was too fearful to make out any report to them at this time, but after three days later he did make a report, but they disbelieved him. He was then asked to be taken to an airport there in Valencia which they did. The police dropped him off. According to the respondent, he immediately spotted some terrorists at the airport. He also indicated that he was able to board some unoccupied planes trying to find a way to hide aboard them which is quite chilling to the Court and it shows obvious lack of airport security. In any event, because he became fearful that these terrorists were at the airport looking for him he left the airport, but everywhere he went, changing taxis here, changing taxis there, going here, going there, he always spotted individuals whom he believed were

A 40 546 867                     6                     June 21, 2000

after him. His friends did not believe him so he could not seek help from them.

After six days of running he made his way to Castillon, a port city in Spain some 40 to 50 kilometers from Valencia. There he illegally went to the port and boarded a vessel that was being loaded with fruit and vegetables. He indicated that at that time he did not know where the vessel was headed, but he hid in or near the smoke stack for four days. Then after four days when the vessel had departed the pier and was sea bound he gave himself up to the crew and the captain befriended him, told him it was Polish-flagged vessel and was headed to the United States, and offered him a lift to the United States. Upon docking in New Jersey the respondent was detained and eventually referred to an asylum officer.

The respondent went on to testify that his parents were killed in 1998. He was informed of this by a brother who called him in Spain and told him that he had buried their parents about a month before. They had died in an auto accident. Then while in a cafe run by a former neighbor who had lived near his parents' house in Algeria who owned this cafe or coffeehouse, whatever, in Valencia, Spain, this neighbor told him that he had been back to Algeria and discovered that his parents, along with about 250 other townspeople, were killed. At first the respondent said he blamed their death by the Muslims. He did not like any Muslims any more. Then he conceded that other people

A 40 546 867                              7                              June 21, 2000

said it was the Algerian military who killed his parents and all those hundreds of other people. He does not know, but he is certainly fearful one way or the other in this regard. He also testified that he last had contact with a sister in late 1999 or perhaps it was a brother. The Court missed which one. Concerning his family, most of his siblings are still living in Algeria apparently, although only one was living in Bercour at the time.

The respondent has repeatedly indicated the fear of these Algerian terrorists that he encountered over the years and with which he was loosely associated with on a business relationship in Spain. He believes that they know where he lives in Algeria. They have tried to kill him already. They will go and try to kill him should he return to Algeria. They will silence him because he knows who they are and can identify them and also because he refused to join.

An applicant for asylum in the United States must show that he is a "refugee" within the meaning of Section 101(a)(42)(A) of the Immigration and Nationality Act. Refugee is defined in relevant parts as a person who is unable or unwilling to return to his native country because of a well-founded fear of persecution on account or race, religion, nationality, membership in a particular social group, or political opinion. INS v. Elias-Zacharias, 508 U.S. 478 (1992). A fear of persecution is well-founded if a reasonable person in the same or similar

circumstances would possess such a fear. <u>Matter of Mogharrabi</u>,
19 I&N Dec. 439 (BIA 1987). Even if the applicant meets his
burden of establishing he is a refugee in relation to asylum, the
decision whether to grant a particular application is still
within the Attorney General's discretion.

To obtain a temporary withholding of removal under Section
241(b)(3) of the Immigration and Nationality Act, as amended, an
applicant must establish there is a "clear probability" that he
will suffer persecution on one or more of the above grounds. If
an applicant meets the standard his withholding of removal is
mandatory. The statutory standards for a grant of withholding
are, therefore, different from those governing asylum. Indeed,
the burden of proof an alien must meet to be eligible for asylum
is lower than that required of an alien who seeks withholding of
removal. <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421 (1987). An
applicant who cannot meet the lower threshold required for asylum
he, therefore, cannot meet the higher threshold bar for mandatory
withholding of removal.

First, after listening to the respondent, the Court believes
essentially all the respondent's testimony. The Court has found
him to be a credible witness, as did the asylum officer. There
have been certain ramblings of the respondent. He has had some
difficulties in following the directions of the Court just to
answer the questions. He is minimally formally educated. I
would call him a functional literate person. The Court believes

A 40 546 867                    9                    June 21, 2000

he has a genuine fear.  The Court has also observed the respondent making somewhat inappropriate gesticulations with his hands, observed him to be short and curt in some of his answers, and at the very next second to be very complaint.  He tends to smile at inappropriate places in his testimony, and the Court does not discern him to be misleading in any manner.  The Court certainly concurs with the asylum officer in his assessment where the asylum officer reviewed what she would consider as erratic behavior.  There may be some degree of mental incapacity here and this is what the Court is certainly primarily concerned about, particularly when there is evidence that every where he turned after running away in Spain he saw these people after him.  No matter where he went they were there.  It seems like this respondent may have a problem with identifying with reality sometimes, but certainly the Court is not going to make a finding that he was trying to mislead the Court.  On the other hand, it does appear by all indications the respondent is genuinely fearful that what he believes has happened to him and what will happen to him is true.

The Court would also make a finding that there is no evidence of firm resettlement in Spain.  Just when you think you have it pinned down about his status in Spain he comes up with something else, but again, the Court attributes this more to the uncertainty of the respondent as to legal measures of what his status was in Spain.  He did not attempt to try to mislead the

Court or try to posit with the Court any inconsistent evidence.
Apparently he had hired a lawyer in Spain.  Apparently he had
some type of temporary visas there, but he kept insisting he did
not have work authorization.  The Court is well aware of most
countries in Europe their requirements for status and his
testimony is nonsensical in this regard, so the Court will make
at the very least there is no evidence in this record to show he
has a firm resettlement as that term would be defined by case law
in Spain.  Therefore, the Court will not even consider any aspect
of this claim as fear of returning to Spain because the Court is
highly dubious that the Spanish government would permit Mr. Overk
to return there in any status, and the Court will certainly not
direct him to be so.

The Court is well aware of the country conditions in Algeria
which has been established in this case in the record at Group
Exhibit 3-D and E, the Department of State's <u>Profiles</u> and <u>Country
Report</u>, particularly subsection D therein, the <u>Country Reports</u> on
Algeria which is the latest one dated February 25, 2000.  There
is much violence that has been perpetuated and on-going in a
major way by the FIS, the armed Islamic Front, which essentially
had it genesis in most recent times when the Algerian government
dissolved the national elections in 1992 when the FIS were poised
to win a majority in the legislature.  They took to the hills and
to the streets to wage a very violent campaign of terror against
the government and the poor helpless people of Algeria.

A 40 546 867                    11              June 21, 2000

Since then a civil war has raged between primarily government forces who have been accused by the international community of perpetuating civil rights abuses and then armed elements of the FIS and other armed Islamic fundamentalists. Indeed, the evidence suggests over 100,000 civilians have died in the past few years, mostly violent deaths, including small children on a massive scale. Men and women, targets of opportunity massively and singularly, but again, also there is government complicity under the security forces in this regard, although on a smaller scale.

The latest Country Reports show that while the civil war has diminished somewhat still thousands of people manage to die a violent death as of late 1999, mostly innocent and unarmed civilians. The Country Reports also indicate the FIS will attack anyone they believe who supports the government and does not strictly adhere to their views of the Muslim faith. By all accounts the FIS is nothing more than a ruthless band of degenerates hiding behind the Islamic religion to create mayhem and murder on a massive scale in Algeria, and unfortunately the international community has found the Algerian government not up to the task of effectively countering this danger to its existence instead of fomenting violence upon a helpless population in their feeble attempts to stop the FIS. By all accounts Algeria is a miserable place and a dangerous place, so it is against this backdrop that this Court must assess this

A 40 546 867                    12                    June 21, 2000

claim.

The Court, after fully considering the respondent's testimony, which it has found to be genuine, must find that he has failed to established that he has a well-founded fear of being persecuted on any of the grounds set forth in Section 101(a)(42)(A) of the Immigration and Nationality Act upon his return to Algeria.  The respondent has been gone some 12 years, as Service counsel points out.  There is no evidence that anyone in Algeria is looking for him.  If the respondent is to be believed and the Court will go so far as to say that it is just going to accept the respondent's testimony concerning his running away from the terrorists as he testified, there is no indication that they are looking for him in Algeria.  There is a civil war, as noted, raging there perpetuated by the Islamic terrorists who kill indiscriminately in Algeria, but there is no persuasive evidence in this record that the respondent would be any in way in more danger than anyone else in Algeria or any other helpless Algerian exposed to the civil war there.  Further, the respondent has siblings living in Algeria.  Most of who do not live in the town he used to live in and as of late 1999 when he spoke to one of his sisters there has been no indication that that conversation revealed that any of his family members remaining in Algeria have been harmed in any way.  As to his parents, tragically they died along with many of the hundreds of thousands of other people at the hands of either the government or probably

and primarily the FIS and their whole gang of ruthless rebels.
It is certainly unfortunate for the respondent to lose his
parents in this regard, but the Court can assess no more than
random victims of violence of the civil war there and that is not
a basis in and of itself to be granted asylum in the United
States.

The respondent has not shown also that he could not live
elsewhere in Algeria other than his home town so he would be in
no more danger than his siblings or any other Algerian citizen.
It is pure speculation on the part of respondent, generally
stated, however, but notwithstanding pure speculation, that these
"terrorists" in Spain would look for him in Algeria.  Some of
those were not even Algerian citizens.  Some were Syrians and
others were Palestinians, others Pakistanis.  There is no
evidence in this record that such disparate groups have joined
the FIS or the GIA or anyone else or any other of these terrorist
organizations waging civil war in Algeria, but even if the
Algerians operate back and forth between Spain and Algeria there
is no evidence to link the respondent with them.

Still the Court has trouble trying to fathom exactly what
led to the falling out of the respondent by these people.  If
they are ruthless terrorists I guess they do not need much of a
provocation, particularly in Spain they are in a foreign country
and perhaps they felt the respondent was a liability.  He knew
who they were and he could report them to the police.  I do not

A 40 546 867                    14                  June 21, 2000

believe that that would have the same degree in Algeria where tens of thousands Muslim Algerians have joined the FIS.  I do not believe they would care one way or the other whether the government would be able to identify them.  Consequently, as the Court finds no firm nexus between the Algerian terrorists in Spain who were after him and his return to Algeria since he does not need to return to Spain, the Court finds that the respondent has failed to sustain his burden of proof in establishing that he has a well-founded fear as any other person in the same or similar circumstances would possess.  His application for asylum, therefore, will be denied.  Further, the respondent's application for withholding of removal with automatically be denied since he has not been able to establish the higher burden of proof of "clear probability" that he would suffer persecution.  Again, since he has not been able to sustain his burden of proof on the lower level required for asylum, therefore, he cannot meet the higher threshold required for withholding of removal.

As to the respondent's tandem application under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading or Punishment, the Court finds that while the respondent's testimony has been credible, it has not been persuasive and it is not based upon any objective facts upon which a Court would be able to grant him withholding of removal or deferral of removal under Article 3 of the Convention Against Torture.  He has not sustained his burden of proof to show that

there is a likelihood of being tortured upon his return to Algeria as that term is defined in the regulations implementing Article 3.  See 8 C.F.R. Section 208.16(c)(2).  Therefore, as that evidence is lacking, the Court will hereby deny his tandem claim under Article 3 of the Torture Convention.

Accordingly, based upon the foregoing, the following orders will be entered:

ORDER

IT IS HEREBY ORDERED that respondent's application for asylum and withholding of removal is hereby denied.

IT IS FURTHER ORDERED that the respondent's claim under Article 3 of the United Nations Convention Against Torture is hereby denied.

IT IS FURTHER ORDERED that respondent is hereby ordered returned to the jurisdiction of the Immigration and Naturalization Service to carry out the order of removal.

_____
WALTER A. DURLING
Immigration Judge

A 40 546 867                    16                    June 21, 2000

**EXHIBIT 2**

U. S. Department of Justice
Immigration and Naturalization Service

## Notice of Referral to Immigration Judge

| | |
|---|---|
| | **Date** 4/18/00 |
| | **A-File** 77630244 |
| **Name** OVERK, KARIM | **Country of Citizenship** ALGERIA |
| **Place and Manner of Arrival** Camdsen, NJ (By boat) | **Date of Arrival** 2/4/00 |

To immigration judge:

☐ 1. The above-named alien has been found inadmissible to the United States and ordered removed pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act). A copy of the removal order is attached. The alien has requested asylum and/or protection under the Convention against Torture and the matter has been reviewed by an asylum officer who has concluded the alien does not have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act and 8 C.F.R. §§ 208.30(e) and (f).

☐ 2. The above-named alien arrived in the United States as a stowaway and has been ordered removed pursuant to section 235(a)(2) of the Act. The alien has requested asylum and/or withholding of removal under the Convention against Torture and the matter has been reviewed by an asylum officer who has concluded the alien does not have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act.

☒ 3. The above-named alien arrived in the United States in the manner described below and has requested asylum and/or withholding of removal under the Convention against Torture. The matter is referred for a determination in accordance with 8 CFR 208.2(b).  Arrival category (check one):

☐ Crewmember/applicant    ☐ Crewmember/refused    ☐ Crewmember/landed
☐ Crewmember/violator    ☐ VWPP/applicant    ☐ VWPP/violator
☐ 235(c) order    ☐ S-visa nonimmigrant    ☒ Stowaway: credible fear determination attached

☐ 4. The above-named alien has been ordered removed by an immigration officer pursuant to section 235(b)(1) of the Act. A copy of the removal order is attached. In accordance with section 235(b)(1)(C) of the Act, the matter is referred for review of that order. The above-named alien claims to be (check one):
☐ a United States citizen    ☐ a lawful permanent resident alien
☐ an alien granted refugee status under section 207 of the Act    ☐ an alien granted asylum under section 208 of the Act.

☐ 5. The above-named alien has been ordered removed pursuant to section 238(b) of the Act, or the INS has reinstated a prior exclusion, deportation, or removal order of the above-named alien pursuant to section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture and the claim has been reviewed by an asylum officer who has concluded the alien **does not** have a reasonable fear of persecution or torture. The alien has requested a review of that determination in accordance with 8 C.F.R. §§ 208.31(f) and (g).

☐ 6. The above-named alien has been ordered removed pursuant to section 238(b) of the Act, or the INS has reinstated a prior exclusion, deportation, or removal order of the above-named alien pursuant to section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture and the claim has been reviewed by an asylum officer who has concluded the alien **has** a reasonable fear of persecution or torture. The matter has been referred for a determination in accordance with 8 C.F.R. § 208.31(e).



Form I-863 (rev. 3/22/99)N

**EXHIBIT 3**

IMMIGRATION COURT
3434 CONCORD ROAD
YORK, PA  17402

In the Matter of:                          Case No:  A77-630-244

OVERK, KARIM

Applicant          *Pro Se*                IN ASYLUM-ONLY PROCEEDINGS

On Behalf of the Applicant                 On Behalf of the INS


ORDER OF THE IMMIGRATION JUDGE


This is a summary of the oral decision entered on  and
is issued solely for the convenience of the parties.  If the proceedings
should be appealed or reopened, the oral decision will become the official
opinion in the case.

     ORDER:    It is hereby ordered that the applicant's request for:

[ ✓ ] 1. Asylum is:
        [  ] Granted
        [  ] Withdrawn
        [X] Denied

[ ✓ ] 2. Withholding of Removal under INA 241(b)(3) is:
        [  ] Granted
        [  ] Withdrawn
        [X] Denied

[ ✓ ] 3. Withholding of Removal under the Convention Against Torture is:
        [  ] Granted
        [  ] Withdrawn
        [X] Denied

[  ] 4. Deferral of Removal under the Convention Against Torture is
        granted.

   Date:  *June 21, 00*              _____ *Walter A. Durling* _____
                                     WALTER A. DURLING
                                     Immigration Judge


APPEAL: WAIVED
APPEAL DUE BY: *July 21, 00*

_____ *Note: no finding of Spain residence a*
                    *citizenship*
RYS

**EXHIBIT 4**



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

*alien appeals*

**OVERK, KARIM**
**3400 CONCORD AVENUE**
**YORK,  PA  17402-0000**

**INS LIT./York Co. Prison/YOR**
**3400 Concord Road**
**York, PA  17402**

**Name: OVERK, KARIM**

**A77-630-244**

**Date of this notice: 10/20/2000**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

*Paul W. Schmidt*

Paul W. Schmidt
Chairman

Enclosure

RECEIVED
DEPARTMENT OF JUSTICE
2000 OCT 23  P 2: 34
LITIGATION-PHIL/YORK

Panel Members:
    GRANT, EDWARD R.
    HOLMES, DAVID B.
    HURWITZ, GERALD S.

ANDREWSD

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of     Board of Immigration Appeals

Falls Church, Virginia  22041

File:  A77 630 244 - York

Date:    OCT 2 0 2000

In re:  KARIM OVERK

IN ASYLUM PROCEEDINGS PURSUANT TO 8 C.F.R. §§ 208.2(b)(1) and (2)

APPEAL

ON BEHALF OF RESPONDENT:    Pro se

ON BEHALF OF SERVICE:    Maureen C. Gaffney
                         Assistant District Counsel

APPLICATION:  Asylum; withholding of removal; Torture Convention

ORDER:

    PER CURIAM.  The respondent's appeal from an Immigration Judge's June 21, 2000, decision denying his requests for asylum and withholding of removal under sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1231(b)(3), and for withholding of removal under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted and opened for signature Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) (hereinafter "Convention Against Torture"), will be dismissed.  The respondent's request for oral argument before the Board is denied.  8 C.F.R. § 3.1(e).

    The Immigration Judge adequately recited the facts of the case (I.J. at 2-8) as well as the law regarding asylum and withholding of removal (I.J. at 8-9).  *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); 8 C.F.R. §§ 208.13 and 208.16.  We agree with the Immigration Judge that the respondent failed to establish a well-founded fear or a clear probability of persecution if he is returned to Algeria.  The respondent has not shown that the individuals who sought him out apparently with a desire to harm him may have been motivated, in whole or in part, by a protected ground.  *See, e.g., Matter of S-P-*, 21 I&N Dec. 486, 491 (BIA 1996) (recognizing that the task of the asylum applicant is "to demonstrate the reasonableness of a motivation which is related to one of the enumerated grounds"); *Matter of H-*, 21 I&N Dec. 337 (BIA 1996).

    The respondent had been engaged in an ongoing criminal enterprise with a number of individuals, who included Algerians, Pakistanis, Syrians, Libyans, and Palestinians, for about 9 years in Spain when they began asking him to get them hunting weapons and to join their terrorist organization.  The respondent reported that he did not tell them he would not join them; rather, he pretended he did not understand what they meant or he laughed (Tr. at 39, 43).  These individuals

A77 630 244

did not verbally threaten the respondent or tell him they would kill him (Tr. at 44). However, the respondent discovered someone with a knife hiding in his home one night, and he spent the next 6 days running from these individuals until he was able to stow away on a ship. The respondent has not shown that these individuals may have been motivated by a protected ground rather than by their desire to prevent the respondent from reporting their illegal activities to the police. Moreover, we agree with the Immigration Judge that it is pure speculation that these individuals, some of whom were not even Algerian citizens, would look for the respondent in Algeria. The record does not establish that the respondent would face harm in Algeria by terrorist elements where he has been outside of that country for 12 years, he would not have to return to the area from which he came, and he has not shown that those who sought him in Spain would have sufficient interest in him to pursue him in Algeria. While the evidence establishes that tens of thousands of Algerians have fallen victim to the violent tactics of Islamic terrorists, we agree with the Immigration Judge that "there is no persuasive evidence in this record that the respondent would be . . . in more danger than anyone else in Algeria or any other helpless Algerian exposed to the civil war there" (I.J. a 13).

The respondent also contests on appeal the Immigration Judge's denial of his request for withholding of removal under Article 3 of the Convention Against Torture.[1] However, we agree with the Immigration Judge that the respondent has not established that if he were returned to Algeria, it is more likely than not that he would be tortured "at the instigation of or with the consent or acquiescence of" Algerian officials or persons acting in an official capacity. 8 C.F.R. §§ 208.16-208.18; *Matter of S-V-*, Interim Decision 3430 (BIA 2000).

Accordingly, the appeal is dismissed.

_____
FOR THE BOARD

---

[1] Although the respondent requested "reopening" to consider his claim to withholding of removal under Article 3 of the Convention Against Torture, we point out that this form of relief was considered and denied by the Immigration Judge at proceedings below. We have considered on appeal the arguments made by the respondent in his motion to reopen.

**EXHIBIT 5**

# POST ORDER CUSTODY REVIEW WORKSHEET FOR FILE REVIEW AND/OR INTERVIEW

**Detainee Name:**     OVERK, Karim                    **"A" Number:**  A77 630 244

**Date of Birth:**  05/08/1966        **AKAs:**    None            **BOP Number:**    N/A

**Country of Birth:**    Algeria                **Citizenship:**  Algeria

**Date of Arrival:**  01/25/2000                **Place of Arrival:**      Camden, NJ

**Manner of Arrival:**  Stowaway            **Last Date into INS Custody:**    01/25/2000

**Entered INS Custody from:**     ☐     **Local** ☐ **State** ☐ **Federal Institution**
                                                            ☒     **Other**

**Location:**                               **Institution Number:**

**Immigration History:**  (Prior INS arrest[s]/parole/bond/custody information)

Describe:     - Encountered on 1/25/00 on the M/V Green Eskimo – SUBJECT stated that he had credible fear.
- Interviewed by APSO on 2/28/00 and determined to have credible fear
- On 7/21/00, the Immigration Judge denied SUBJECT's claims for Asylum, Withholding of Removal under INA 241(b)(3) and Withholding of Removal under CAT.  SUBJECT reserved appeal.
-     On 10/20/00, the BIA affirmed it's decision with that of the Immigration Judge.

**Deportation Officer:** Christine D. Church            **Date of Review:**      4/24/2001

**Location Detained:**    York County Prison
                                    3400 Concord Road
                                    York, PA  17402

## Deportation/Exclusion/Removal Proceedings

**List all Charges:**     ☐     Sections 237 (a)
                                    ☒     Section 212 (a)(7)(A)(i)(I), 212(a)(7)(B)(i)(I), 212(a)(7)(B)(i)(II)
                                    ☐     Section 241          ,     ,

☒     Under <u>Final Order</u> dated 10/20/2000 by ☐ IJ ☒ BIA ☐ Other

☐     Appeal Waived/Appeal Time Elapsed

Page 1

**Travel Document Status/History:**

SUBJECT has Form I-259 (Notice to Detain, Remove or Present Alien in his immigration file. It is the responsibility of the carrier to remove him. Through various conversations with the carrier and it's attorneys. As of 4/23/01, the carrier has been unable to obtain a travel document for him.
4/23/01: Sent TD request to Embassy of Algeria.
4/23/01: Sent TD request to HQ for assistance.

## Legal Representative / Attorney

**G-28 Filed:**   ☐ Yes     ☒ No

**Legal Rep/Atty. Notified of Interview:**     ☐ Yes     ☐ N/A     by:
on:

**Name of Representative / Attorney:**

**Mailing Address:**          **Telephone Number:**

**Present during interview:**     ☐ Yes     ☐ No

## Criminal History

**Outside the United States:**   Unknown
(specify nature of crime, whether convicted, sentence imposed, date, and country)

**In the United States:**          No

**NCIC Checks:**     ☐ Criminal History          ☒ No record Found
                              (State and Federal)
**FBI#**                                    **SID#**
          Summary of NCIC Checks:

Page 2

## Institutional / Disciplinary Record

**Did the detainee have prior Disciplinary Reports?**        ☐ Yes        ☒ No

    If Yes, List & Describe:

    Source:

**Disciplinary reports and Incidents while in INS Custody?**        ☒ Yes        ☐ No

    If Yes, List & Describe:

    5-11-00/Threats to Staff/Found Guilty/20 days, 23 hours lock-in
    2-7-01/Threats to an Inmate/Refusing an Order/Presence in Unauthorized Area/
    Found Guilty/7 days, 23 hours lock-in

## Specifics of Interview

**Date of File Review:**  4/24/01

**Date of Detainee Interview:** N/A

**Location of Interview:**

**Interviewing Officer:#1:**

        #2:    (optional)

**Interpreter Used:** ☐ Yes        ☐ No        Name:
**Language/Dialect:**

**Does the detainee have a place to live in the United States?**        ☐ Yes        ☒ No

    Address:

**Is the detainee subject to any parole or probation requirements?**        ☐ Yes        ☒ No

    Describe:

**Does the detainee have close family ties within the United States?**        ☐ Yes        ☒ No

    Describe:

**Does the detainee have any community ties or non-governmental sponsors?** ☐ Yes ☒ No

    Describe:

**Does the detainee have any employment prospects?**    ☐ Yes    ☒ No

    Describe:

**What is the detainee's employment history?**

    Describe:

**What is the detainee's educational level?**

    Describe:

**Does the detainee have any vocational training?**    ☐ Yes    ☒ No

    Describe:

---

## *Medical/Psychological Concerns*

**Medical/Psychological Report :**  ☐ In A-File  ☐ None  ☐ Not Available

**Date and Source:**

**Summary:**

---

**Other documentary evidence for consideration in this review:**

None

---

**Discussion at Interview**

**Notes:**  N/A

The INS detainee was found ☐ **CREDIBLE**    ☐ **NOT CREDIBLE**
**Explain:**

N/A

## Officer Comments/Analysis & Recommendation

SUBJECT has had two disciplinary reports while in INS custody.  SUBJECT does not have a criminal record in the United States.  SUBJECT admitted in his immigration hearing that he has known several terrorists in Spain and in the U.S.  It is unknown as to what his exact ties are with these terrorists other than his statement that he is afraid of them.

SUBJECT entered the U.S. as a stowaway and has not provided the Service with his true identity.  SUBJECT has not provided the Service with any documentation of place of residency, place of employment or family and/or community ties to the United States.  SUBJECT has not assisted the Service in obtaining any documentation of his identity or a travel document from his country.   I believe that SUBJECT would be a flight risk if released.

I recommend that SUBJECT continue to be detained in Service custody.

Interviewing Officer:  Christine D. Church        Date: 4/24/01        (Detain)    Release

Reviewed by:        Date: 4/24/01        (Concur)    Do Not Concur

**Page 5**

## DISTRICT DIRECTOR'S CUSTODY DETERMINATION

☐ RELEASE FROM CUSTODY / ORDER OF SUPERVISION

☐ RELEASE FROM CUSTODY / ORDER OF SUPERVISION UNDER BOND

   Bond Amount: _____

☐ CONTINUE IN CUSTODY /  RETAIN CUSTODY DETERMINATION AUTHORITY
   FOR AN ADDITIONAL 90 DAYS AFTER REMOVAL PERIOD.

☒ CONTINUE IN CUSTODY /  TRANSFER CUSTODY DETERMINATION
   AUTHORITY TO HQ PDU.

Comments (attach additional sheet(s) if necessary):

INS District Office: _____Phila, PA_____

Signature of District Director: _____    Date: 04/25/01
or of District Director's Designee

_____J Salemi  DADM_____
(Printed Name & Title)

## *HEADQUARTER'S REVIEW OF CONTINUED DETENTION*

| Reviewing Officers | Concur | Reconsider | Date |
|---|---|---|---|
| _____ (Name, Title, Signature) | ____ | _____ | ____ |
| _____ (Name, Title, Signature) | ____ | _____ | ____ |
| _____ (Name, Title, Signature) | ____ | _____ | ____ |

For comments, please refer to the "Headquarters Post Order Custody Review" form.

(Final 10/18/99)                  **Page 6**

**EXHIBIT 6**



**U.S. Department of Justice**

Immigration and Naturalization Service
Philadelphia District
York County Prison Office

*3400 Concord Road*
*York, PA 17402*

April 24, 2001

US INS - HQ OPS / DDP
801 I Street, N.W.
Suite 800 - Attn.: Ellarine Alston
Washington, DC 20536

RE:  **Karim OVERK    A77 630 244**

Dear Ms. Alston:

This office is requesting assistance in obtaining a travel document for the above named individual who is a native and citizen of Algeria.

Mr. OVERK attempted entry into the United States at Camden, New Jersey on January 25, 2000 as a stowaway. Mr. OVERK was processed as an expedited removal and afforded an asylum hearing before the Immigration Judge. The Immigration Judge denied Mr. OVERK asylum. The decision was appealed to the BIA. On October 20, 2000, the BIA dismissed the appeal and affirmed the Immigration Judge's decision.

If you require further information, please contact Officer Christine Church at (717) 840-7246 or 7280.

Sincerely,

Theodore R. Nordmark
Assistant District Director
Detention and Removal

Encl.:    (1.) Copy of the Notice of Referral to Immigration Judge
          (2.) Copy of the Order of the Immigration Judge
          (3.) Copy of the BIA decision
          (4.) I-217
          (5.) Photographs
          (6.) Fingerprints

**EXHIBIT 7**

# POST ORDER CUSTODY REVIEW WORKSHEET FOR FILE REVIEW AND/OR INTERVIEW

**Detainee Name:** Karim OVERK  **Date of Birth:** 05/08/66  **"A" Number:** 77 630 244

**AKAs: NONE**  **BOP: Number: N/A**

**Country of Birth:**  Algeria  **Citizenship:**  Algeria

**Date of Arrival:** 01/25/00  **Place of Arrival:** Camden, N.J.

**Manner of Arrival:** Stowaway  **Last Date into INS Custody:** 01/25/00

**Entered INS Custody from:**  **Local, State, or Federal Institution**
  X  **Other**

**Location: Ship**  **Institution Number:**

**Immigration History:**  (Prior INS arrest[s]/parole/bond/custody information)

Describe: 01/25/00-Subject taken into INS custody. At the time of his arrest he stated that he had credible fear of returning to his native country.
02/38/00- Interviewed by APSO and found to have credible fear
07/21/00- IJ denied subject's claims for Asylum, Withholding of Removal under INA 241(b)(3) and Withholding of removal under CAT. Subject reserved appeal
10/20/00- BIA affirmed it's decision with that of the IJ
04/24/01- Had a Post Order Custody File Review

---

**Deportation Officer:** Christine D. Church  **Date of Review:**  6/8/01

**Location Detained:**  York County Prison, York, PA

---

**Deportation/Exclusion/Removal Proceedings**

**List all Charges:**  Section 237 (a)
  Section 212 (a)(7)(A)(i)(I), (a)(7)(B)(i)(I), (a)(7)(B)(i)(II)
  Section 241 (a)
  X  Under <u>Final Order</u> dated 10/20/00 by  IJ  X BIA  Other

  Appeal Waived/Appeal Time Elapsed

**Travel Document Status/History:**
**04/23/01- carrier has been unable to obtain a travel document.**
**04/23/01- TD request was sent to the Embassy of Algeria**

## Legal Representative / Attorney

**G-28 Filed**:   X Yes   No


**Notification of Interview Made**:     Yes    N/A   by:          on:

**Name of Representative / Attorney**:  Kathleen A. Lucas, M.A.
**Mailing Address**:     140 Roosevelt Avenue   **Telephone Number**:  717-845-5509
                        York, PA 1704
**Present during interview**:       X Yes   No


## Criminal History

**Outside the United States**:   Spain detained him for twenty-six days because he did not have
                                 papers to reside in Spain.
(specify nature of crime, whether convicted, sentence imposed, date, and country)

**In the United States**:  UNKNOWN


**NCIC Checks**:              Criminal History Attached      X No record Found
                             (State and Federal)

     Summary of NCIC Checks:

## Institutional / Disciplinary Record

**Did the detainee have prior Disciplinary Reports?**              Yes    X No

     If Yes, List & Describe:

     Source:

**Disciplinary reports and Incidents while in INS Custody?**     X Yes      No

If Yes, List & Describe: 05/11/00 Threats to Staff/Found Guilty: 20 days (23 hours lock-in)
              02/07/01 Threats to an Inmate/Refusing an Order/Presence in Unauthorized Area/ Found Guilty:
              7 days (23 hours lock-in)

## Specifics of Interview

**Date of File Review:**          08 JUN 01

**Date of Detainee Interview:** 08 JUN 01

**Location of Interview:**       York County Prison, York, PA

**Interviewing Officer:#1:**      John E. McCarthy
                        **#2:**      Patrick Maddas

**Interpreter Used:**   X Yes          No          Name: SY898
**Language/Dialect:**   **Arabic**

---

**Does the detainee have a place to live in the United States?**      X Yes     No

> Address:  Internal Friendship House
>           423 W. Market St.
>           York, PA 17404

**Is the detainee subject to any parole or probation requirements?**      Yes  X  No

> Describe:

**Does the detainee have close family ties within the United States?**      Yes    X  No

> Describe:

**Does the detainee have any community ties or non-governmental sponsors?**    X Yes   No

> Describe:     International Friendship House.

**Does the detainee have any employment prospects?**      X Yes   No

> Describe:     International Friendship House will help him find employment.

**What is the detainee's employment history?**

> Describe:  He has worked as a merchant in Spain and a mechanic in Algeria.

**What is the detainee's educational level?**

> Describe:  Completed 7th grade.

**Does the detainee have any vocational training?**

> Describe:  Received on the job training as a mechanic.

## Medical/Psychological Concerns

**Medical/Psychological Report / Summary:**    Attached   X  None        Not Available

**Date and Source:**

**Other documentary evidence for consideration in this review:**

Subject's "A" file was reviewed.
English as a Second Language (York County Prison)

## Discussion at Interview

**Notes:** Detainee was questioned about his family, criminal and medical history, and work experience.

Detainee has no relatives living in the United States. The International Friendship would be sponsoring him.

Detainee was living in Spain prior to him arriving in the United States. He claimed that he left Spain because terrorist from Pakistan, Palestinian, and Syria were going to kill him. He boarded a ship in Spain. He claimed that he did not know where the ship was going. Once the ship was underway, he was told by the Captain of the ship that the ship was heading to the U.S. He claimed that he terrorist were out to kill him because he refused to help them. He still believed that he would be kill by terrorist if he were returned to Spain and/or Algeria. He claimed that his parents were killed by terrorist in Algeria, but he had no proof that these events happen. He appeared to be suffering from paranoia. He would not go into depth or gave details on the terrorists who were after him.

He claimed he was assisting INS on obtaining a travel document and identity papers from the Algerian government. In reality, he has been hindering. He stated that if he is released he could obtain his identification and other personal papers.

He has two disciplinary reports for threatening other detainees. He stated that when he speaks Arabic the other detainees think he threatening them.

He requested to be released so he could live in peace, freedom, and away from prison.

Statement by Kathleen A. Lucas: I believe he has limited mental ability. He suffered a head injury while in INS custody; in which, resulted in memory lost. He has worked in a factory in the past and seventy percent of York work force is factory jobs. I see no problem of him obtaining a job as a factory worker. He had helped the terrorist in Spain to obtain visas, but when they asked him to obtain weapons he refused. That refusal put his life endangered. He has helped INS on obtaining documents. He has lost contact with his family in Algeria. I also like to add that he is a sweet and sad man.

The INS detainee was found    **CREDIBLE**    X **NOT CREDIBLE**
Explain:  Subject did not appear credible to his panel.  He believed that terrorist are after him.  He claimed that he has been helping INS to obtain identity papers and a travel document from Algeria.  In reality, he has been hindering.

## Officer Comments/Analysis & Recommendation

Detainee has been in INS custody since 01/25/00.  Travel Document request was made on 04/23/01 to the Embassy of Algeria. At the time of this interview the Travel Document was not forthcoming.

Detainee has had two disciplinary reports while in INS custody. Subject does not have a criminal record in the United States. Subject admitted in his immigration hearing that he has known several terrorists in Spain and in the U.S. It is unknown as to what his exact ties are with these terrorists other than his statement that he is afraid of them.

Detainee entered the United States as a stowaway and has not provided the Service with his true identity. Subject has not assisted the Service in obtaining any documentation of his identity or a travel document from his country.

This panel could not conclude that Mr. OVERK would not be a threat to the community, abide to the conditions of his release, remain non-violent, and unlikely to become a public charge.

The panel recommends that Mr. OVERK to be detained

John E. McCarthy
Interviewing Officer #1:                                06/08/01    (Detain)    Release
                                                         Date:

Patrick Maddas
Interviewing Officer #2:                                06/08/01    (Detain)    Release
(optional)                                               Date:


_____                    Concur    Do Not Cocur
Reviewed by:                                Date:

**Page 5**

**EXHIBIT 8**





**U.S. Department of Justice**

Immigration and Naturalization Service
Philadelphia District
York County Prison Office

*3400 Concord Road*
*York, PA 17402*

October 9, 2001

US INS - HQ OPS / DDP
801 I Street, N.W.
Suite 800 - Attn.: Ellarine Alston
Washington, DC 20536

RE: **OVERK, Karim**    A77 630 244

Dear Ms. Alston:

Per your request, enclosed is updated information needed for assistance in obtaining a travel document for the above named individual who is a native and citizen of Algeria.

Mr. OVERK attempted entry into the United States at Camden, New Jersey on January 25, 2000 as a stowaway. Mr. OVERK was process as an expedited removal and afforded any asylum hearing before the Immigration Judge. The Immigration Judge denied Mr. OVERK asylum. The decision was appealed to the BIA. On October 20, 2000, the BIA dismissed the appeal and affirmed the Immigration Judge's decision.

The Service has been working with the Carrier to remove SUBJECT, however, neither the Carrier or the Service has been able to obtain a travel document from the Embassy of Algeria. The last correspondence from the Embassy, dated August 31, 2001, requested that the Service provide them with a copy of SUBJECT's Algerian identification card, passport or birth certificate. SUBJECT did not arrive in the U.S. with any documents to verify his Algerian citizenship and alleges that he is not able to obtain any identity documents of his Algerian citizenship.

SUBJECT was interviewed telephonically by Mr. Karim Belkessam of the Algerian Consulate on October 2, 2001. SUBJECT provided Mr. Belkessam with the name of phone number of one of SUBJECT's brothers living in Algeria. Mr. Belkessam stated that he would contact the brother to see if he could assist in obtaining documentation proving SUBJECT's Algerian citizenship.

If you require further information, please contact Officer Christine Church at (717) 840-7246 or 7280.

Sincerely,

*Theodore R. Nordmark*
Theodore R. Nordmark
Assistant District Director
Detention and Removal

Encl.:    (1.) Copy of previous letter & packet sent to you on April 24, 2001
          (2.) Updated I-217 and continuation sheet
          (3.) Letter for travel document request sent to the Algerian Consulate on April 23, 2001

**EXHIBIT 9**



**U.S. Department of Justice**

Immigration and Naturalization Service
Philadelphia District
York County Prison Office

---

*3400 Concord Road*
*York, PA 17402*

February 20, 2002

US INS - HQ OPS / DDP
801 I Street, N.W.
Suite 800 - Attn.: Lisa Hoechst
Washington, DC 20536

RE:  **OVERK, Karim    A77 630 244**

Dear Ms. Hoechst:

Please accept this letter as a follow-up for assistance in obtaining a travel document for the above named individual who is a native and citizen of Algeria. A letter for request for assistance was previously submitted to your office on April 24, 2001, October 2, 2001 and October 9, 2001.

Mr. OVERK attempted entry into the United States at Camden, New Jersey on January 25, 2000 as a stowaway. Mr. OVERK was process as an expedited removal and afforded any asylum hearing before the Immigration Judge. The Immigration Judge denied Mr. OVERK asylum. The decision was appealed to the BIA. On October 20, 2000, the BIA dismissed the appeal and affirmed the Immigration Judge's decision.

The Service has been working with the Carrier to remove SUBJECT; however, neither the Carrier nor the Service has been able to obtain a travel document from the Embassy of Algeria. Deportation Officer last spoke with Mr. Karim Belkessam of the Algerian Embassy on October 2, 2001. On that date, Mr. Belkessam also interviewed SUBJECT telephonically. After the interview, Mr. Belkessam informed Officer Church that although he does believe that SUBJECT is a citizen of Algeria, the Embassy will not issue a travel document without written documentation of SUBJECT's Algerian citizenship. To this date, SUBJECT has not been able to provide proof of his Algerian citizenship. SUBJECT did not arrive in the U.S. with any documents to verify his Algerian citizenship and alleges that he is not able to obtain any identity documents of his Algerian citizenship.

If you require further information, please contact Officer Christine Church at (717) 840-7246 or 7280.

Sincerely,

Theodore R. Nordmark
Assistant District Director
Detention and Removal

**EXHIBIT 10**



**U.S. Department of Justice**
Immigration and Naturalization Service

HQPDU
*Washington, DC 20536*

A 77 630 244

Karim Overk
C/O US INS
Philadelphia District
1600 Callowhill Street
Philadelphia, PA 19130

We have received your request for review for a custody re-determination. The Immigration and Naturalization Service ("INS") is in the process of reviewing the likelihood of repatriating you to your home country or country where ordered removed pursuant to a final administrative deportation/removal order. You are advised that in accordance with the Supreme Court's instruction in Zadvydas v. Davis, 121 S.Ct. 2491 (2001) and INS regulations, 8 C.F.R. § 241.13 (66 FR 56967, November 14, 2001), you have the burden to show that there is no significant likelihood of repatriating you in the reasonably foreseeable future. In order to undertake the review, , in accordance with 8 CFR §241.4 and 8 CFR §241.13, you must provide the following documentation:

- Copies all passports, birth certificates or other nationality documents in your possession

- Copies of correspondence indicating your good faith efforts to obtain a passport from your country of nationality or other country indicated on your Order of Removal.

- Copies of receipts or responses from Embassies, Consulates or other governmental offices responding to your request for a travel document

Upon receipt of the above information, this office will conduct a full review of your case and make a determination of custody. Until such time as you submit the above information, the removal period defined in 8 CFR §§ 241.4 and 241.13 is held in suspense.

You may submit additional evidence if you believe your removal is not possible in the reasonably foreseeable future. You must resubmit evidence previously submitted that your removal is not imminent for reconsideration. You must also prove that you are taking positive measures to facilitate your removal from the United States. You are also advised that the Service may continue to detain you until there has been a determination under 8 CFR §241.13 whether there is a significant likelihood that you can be removed in the reasonably foreseeable future.

All evidence should be sent to the Headquarters Post Order Unit (HQPDU), 801 I St, NW, Washington, DC 20536, Room 800.

The HQPDU has chosen not to review your case at this time because of:

- _____You are not currently in INS custody.

- _____Your immigration case is pending review by the Board of Immigration Appeals and is therefore, not a final order subject to review by the HQPDU.

- _____The Removal Period has not yet expired, thus making you ineligible for any review.

- _____You have not been in custody with a final order of removal for the statutory period of time.

- _____Your case is pending before a Circuit Court of Appeals and you are not eligible for a review of your case.

- _____You have a judicially ordered stay of deportation, exclusion or removal.

Once you are eligible for review, the HQPDU will conduct a review of your case and issue a decision.

_____K. Hinton_____          4-23-02

Signature of HQPDU Director/Designated Representative          Date

**EXHIBIT 11**

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KARIM OVERK A77-630-244  :
         :
  Petitioner,     :
         :
v.       :  CIVIL ACTION
        :   NO. 02-5253
JOHN ASHCROFT, UNITED STATES :
ATTORNEY GENERAL and the :
IMMIGRATION AND    :
NATURALIZATION SERVICE  :
         :
  Respondents.   :

### DECLARATION OF DAVID SAVINA

I, David Savina, do declare and state as follows:

1. I am employed as a Deportation Officer with the United States Department of Justice, Immigration and Naturalization Service ("INS"). I am assigned to the Philadelphia District Office and duty stationed at the Berks County Prison in Leesport, Pennsylvania. I have been employed with the INS since February 4, 1997. I have been employed as a Deportation Officer since September 14, 1998. As a part of my duties, I am responsible for obtaining travel documents and facilitating the removal of aliens subject to a final order or removal.

2. On several occasions, I personally told Mr. Karim Overk that he was required to actively pursue travel documents from his native country of

Algeria.

3.    To my knowledge, Mr. Overk has neither taken steps to obtain travel

documents from Algeria nor provided the INS with evidence of his

independent efforts to obtain documents confirming his Algerian citizenship.

4.    Although he provided the Algerian consulate representative with the name of

a brother in Algeria, he has not made any efforts to contact the brother or

any other persons who may provide assistance in obtaining travel documents.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C.

§1746 that the information contained herein is accurate to the best of my

knowledge and belief.

September 20, 2002

David Savina
Deportation Officer
Immigration & Naturalization Service

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KARIM OVERK A77-630-244      :
      :
      Petitioner,      :
      :
      v.      :      CIVIL ACTION
      :      NO. 02-5253
JOHN ASHCROFT, UNITED STATES :
ATTORNEY GENERAL and the      :
IMMIGRATION AND      :
NATURALIZATION SERVICE      :
      :
      Respondents.      :

## DECLARATION OF DAVID SAVINA

I, David Savina, do declare and state as follows:

1.    I am employed as a Deportation Officer with the United States Department of

Justice, Immigration and Naturalization Service ("INS"). I am assigned to the

Philadelphia District Office and duty stationed at the Berks County Prison in

Leesport, Pennsylvania. I have been employed with the INS since

        . I have been employed as        (current title) since

    . As a part of my duties, I am responsible for obtaining travel documents

and facilitating the removal of aliens subject to a final order or removal.

2.    On several occasions, I personally told Mr. Karim Overk that he was required

to actively pursue travel documents from his native country of Algeria.

3.    To my knowledge, Mr. Overk has neither taken steps to obtain travel

documents from Algeria nor provided the INS with evidence of his

independent efforts to obtain documents confirming his Algerian citizenship.

4.      Although he provided the Algerian consulate representative with the name of a

brother in Algeria, he has not made any efforts to contact the brother or any

other persons who may provide assistance in obtaining travel documents.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C.

§1746 that the information contained herein is accurate to the best of my

knowledge and belief.

September 19, 2002                              _____
                                               David Savina
                                               Deportation Officer
                                               Immigration & Naturalization Service